UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES INSURANCE SE,

    Plaintiff,

vs.

CASE NO. 1:20-cv-22865-CMA

SEA 21-21 LLC,

    Defendant.
_____/

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE (hereinafter "GREAT LAKES"), by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rule of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, file this its Statement of Material Facts Not in Dispute submitted in support of Plaintiff's Motion for Summary Judgment, and further thereto would respectfully state as follows:

1. Concept Special Risks Ltd. (hereinafter "Concept") is GREAT LAKES' managing general agent. Declaration of Beric Anthony Usher, dated August 19, 2021, a true and correct copy of which is attached hereto as Exhibit 1, at ¶6.

2. Global Insurance Brokers, Inc. (hereinafter "Global") (formerly "Specialty Broker Corporation") was the agent of SEA 21-21 at all times relevant hereto. Ex. 1, at ¶16.

3. On or about April 12, 2018, Defendant SEA 21-21 LLC (hereinafter "SEA 21-21") submitted to the Plaintiff, via Defendant's agent, an application (hereinafter "the Original Application") for a policy of marine insurance on the 1996 65 ft Ocean Tech vessel named "LA BESTIA" (hereinafter "the Vessel"). ECF No.62, at ¶¶'s 7, 14. A true and correct copy of the Original Application was previously filed ECF No. 62-1.

4. The Original Application represents that Jorge Fernandez is the beneficial owner of SEA 21-21 as well as an operator of the Vessel. ECF No. 62, at ¶9; *see* ECF No. 62-1, at 1, 3.

1

5. The Original Application asks "Have you or any named operator been involved in a loss in the last 10 years (insured or not)" and the box for "No" is checked. ECF No. 62, at ¶12; *see* ECF No. 62-1, at 4.

6. The Original Application asks of each operator: "Have you been involved in a Loss in the last 10 years (insured or not)? If YES, please give details" to which the response for operator Jorge Fernandez is "NO." ECF No. 62, at ¶13; *see* ECF No. 62-1, at 4.

7. The Original Application represents that the purchase price of the Vessel was $400,000. ECF No. 62, at ¶8; ECF No. 62-1, at 1.

8. On or about March 19, 2018, Plaintiff issued to SEA 21-21 its Marine Insurance Policy No. CSRYP/166843 (hereinafter "the 2018 Policy"), affording Hull & Machinery coverage in the amount of $400,000.00 for a period of one (1) year commencing on March 5, 2018, on the Vessel. ECF No. 62, at ¶14.

9. Plaintiff agreed to issue the 2018 Policy based upon the representations set forth in and the material information disclosed in the Original Application. ECF No. 62, at ¶15.

10. Concept assessed a 10% credit on the premium charged for the 2018 Policy in reliance on the Insured's representations that he had had no losses in the previous ten (10) years. Ex. 1, at ¶26.

11. On or about March 22, 2019, Defendant submitted to the Plaintiff, via Defendant's agent, a Renewal Questionnaire for coverage of the Vessel. ECF No. 62, at ¶20. A true and correct copy of the Renewal Questionnaire was previously filed as ECF No. 62-4.

12. The Renewal Questionnaire asks whether each operator "ha[d] been involved in a Loss in the last 10 year (insured or not)? If YES, please give details and amounts paid" to which the response for Jorge Fernandez is "No." ECF No. 62, at ¶22; *see* ECF No. 62-4, at. 2.

13. The Renewal Questionnaire asks "Have there been any other changes since your last signed application form? If so, please detail" to which the response is "No." ECF No. 62, at ¶23; *see* ECF No. 62-4, at 3.

14. The Original Application and Renewal Questionnaire state the same warning: "**Any misrepresentation in this application for insurance will render insurance coverage null and void from inception.**" ECF No. 62-4, at 3 (emphasis in original).

15. On or about March 22, 2019, Plaintiff issued to SEA 21-21 its Marine Insurance Policy No. CSRYP/174282 (hereinafter "the 2019 Policy"), affording Hull & Machinery coverage in the amount

of $400,000.00 for a period of one (1) year commencing on March 5, 2019, on the Vessel. ECF No. 62, at ¶25. A true and correct copy of the 2019 Policy was previously filed as ECF No. 62-5.

16. Plaintiff agreed to issue the 2019 Policy based upon the representations set forth in and the material information disclosed in the Original Application and the Renewal Questionnaire. ECF No. 62, at ¶26; Ex. 1, at ¶32.

17. Concept assessed a 10% credit on the premium charged for the 2019 Policy in reliance on the Insured's representations that he had had no losses in the previous ten (10) years. Ex. 1, at ¶33.

18. On or about March 7, 2019, Defendant submitted to Plaintiff, via e-mail from Defendant's agent, a request to increase insured hull value of "LA BESTIA" from $400,000 to $775,000. ECF No. 62, at ¶16; *see* ECF No. 62-2; Ex. 1, at ¶34.

19. The 2019 Policy, like the 2018 Policy, is an "agreed value" policy. *See* ECF No. 62-5, at 4. ("'Agreed Value' means the sum insured under Section A of the insuring agreement declaration page or any endorsement to the same.")

20. In an e-mail exchange dated March 20, 2019, SEA 21-21 represented, via its agent, Beatriz Watson of Global, that receipts in support various upgrades/improvements did exist but would be difficult to provide as they were in "storage boxes." In response, Alex Thomas of Concept requested "a spreadsheet showing the individual costs for the items." A true and correct copy of the aforementioned e-mail exchange is attached hereto as Exhibit 2.

21. In an email dated March 21, 2019, SEA 21-21, via its agent, provided a breakdown of the alleged upgrades/improvements made to the Vessel, totaling a cost of $324,185. ECF No. 62, at ¶18; see a true and correct copy of the aforementioned email previously filed as ECF No. 62-3, at 1-3.

22. Excluding certain items which Concept deemed maintenance-related [*see* ECF No. 62-3, at 1 (in which Ms. Thomas of Concept states "I have marked the ones I do not think we can include in red")], Concept agreed to include the cost of the remaining alleged upgrades/improvements, totaling a cost of $176,510, in its consideration of SEA 21-21's request to increase the insured value of the Vessel. Ex. 1, at ¶38.

23. On or about April 5, 2019, Underwriters issued an endorsement increasing the agreed value of the hull sum insured to $560,000. ECF No. 62, at ¶28; *see* ECF No. 62-5, at 33.

24. Plaintiff agreed to issue the above referenced endorsement based upon the representations set forth in, and the information disclosed in, communications from the Defendant, via its agent,

regarding the requested increase in hull value and alleged improvements to the Vessel. ECF No. 62, at ¶29; Ex. 1, at ¶39.

25. On or around February 26, 2020, during the period of the 2019 Policy, the Vessel was involved in an incident in which it has been alleged that certain damage was sustained after the Vessel caught fire and sank while en route from Pompano Beach, FL to Bimini. ECF No. 62, at ¶30. *See* a Plaintiff's first notice of the loss, previously filed as ECF No. 62-6.

26. Upon receipt of the first notice of the February 26, 2020 loss described herein, Plaintiff caused an investigation to be made into the facts and circumstances surrounding the incident. ECF No. 62, at ¶32.

27. In the course of investigating the February 26, 2020 loss described herein, Plaintiff became aware that Mr. Fernandez had a loss on or about May 9, 2018 under a different GREAT LAKES policy which had not been properly disclosed on the Renewal Questionnaire. Ex. 1, at ¶31.

28. The aforementioned loss of May 9, 2018 involved a crew member named Erick Largacha who was injured while serving aboard the "ORANGE TWISTER," insured under Plaintiff's Policy No. CSRYP/161642. Ex. 1, at ¶9.

29. The Named Insureds under Plaintiff's Policy No. CSRYP/161642 were Sea 20-20 LLC and Jet Boat Miami LLC. *See* Policy Schedule for Plaintiff's Policy No. CSRYP/161642, a true and correct copy of which it attached hereto as Exhibit 3, at 1.

30. Mr. Fernandez was the owner, in whole or in part, of both Sea 20-20 LLC and Jet Boat Miami at the time of the May 9, 2018 loss involving Mr. Largacha and the "ORANGE TWISTER." Deposition of Jorge Fernandez as Defendant's Corporate Representative, dated March 26, 2021, previously filed as ECF No. 60-2, at 25:10-22; 29:2-9.

31. Mr. Largacha made a claim against Sea 20-20 LLC and/o Jet Boat Miami LLC related to the injuries he sustained on May 9, 2018. ECF No. 60-2, at 29:2-12.

32. Concept was not aware that this same insured, Jorge Fernandez, had suffered a loss under a different GREAT LAKES Policy until it was notified via email on April 22, 2020 by Nautilus Investigations, as they had assisted with both claims. Ex. 1, at ¶31. A true and correct copy of the aforementioned email of April 22, 2020 is attached hereto as Exhibit 4.

33. In the course of litigation, Plaintiff became aware that the Insured had suffered four additional prior losses which had not been properly disclosed on either the Original Application or the Renewal

4

Questionnaire. ECF No. 62, at ¶¶'s 43-46; Ex. 1, at ¶11.

34. In or around July 2016, the "LA BESTIA" suffered an incident resulting in the Vessel being placed in dry dock while it was repainted and the propellor was repaired. *See* e-mail from Jorge Fernandez, dated March 4, 2018, a true and correct copy of which is attached hereto as Exhibit 5, at 2 (in which Mr. Fernandez references "I am attaching the list with all the repairs done on La Bestia, including the dry docking that was carried out in July 2016," "paint used for the boat," and "repair of the propellers.")

35. The "LA BESTIA" was put in dry dock for repairs in July 2016 because it had struck a sandbar. *See* email from Jose Figueroa of Global, dated May 24, 2021, a true and correct copy of which is attached hereto as Exhibit 6, at 1 (in which Mr. Figueroa states: "[t]o the best of my recollection, the July 2016 incident mentioned in 2018 by Mr. Fernandez 'related to minor damages sustained when vessel went over a small sandbar raising-up at low tide.' The minor repairs were completed….")

36. On or about August 6, 2016, a woman named Maria Cardoza was injured in an incident aboard a vessel owned by SEA 21-21 LLC and/or Jet Boat Miami LLC. Second Deposition of Jorge Fernandez as Defendant's Corporate Representative, dated July 21, 2021, a true and correct copy of which is attached hereto as Exhibit 7, at 43:16- 44:1 and 45:15-46:6.

37. Ms. Cardoza made a claim against SEA 21-21 and/or Jet Boat Miami LLC for damages related to the injuries she sustained on August 6, 2016. *Id.*; *see also* email and attached demand letter dated May 10, 2018 from Ben Dowers, Esq., a true and correct copy of which is attached hereto as Exhibit 8, at 2 (in which Mr. Dowers states "[o]n August 6, 2016, Ms. Cardoza was injured while riding the banana boat which was pulled by a jet ski….")

38. On or about May 26, 2017, a woman named Mache Lanier was injured aboard a vessel owned in whole or in part by Jet Boat Miami, LLC. Ex. 7, at 19:7-20:13. *See also* e-mail from Mr. Fernandez, dated September 26, 2017, with referenced attachments, a true and correct copy of which is attached hereto as Exhibit 9, at 1 (in which Mr. Fernandez states "I am attaching the letter from the lawyer, the waiver, and the accident report for Mache Lanier case. The customer was on the banana boat on May 26, 2017" and "sa[id] she had dislocated her knee on the ride.")

39. Ms. Lanier made a claim against Jet Boat Miami, LLC for her injuries as a result of the May 26, 2017 incident. *See* Ex. 9, at 7 ("You are hereby notified of her injury claim against you for this

this [sic] accident.")

40. At the time of the May 26, 2017 incident involving Ms. Lanier, Jet Boat Miami, LLC was owned in whole or in part by Mr. Fernandez. Ex. 7, at 48:5-17.

41. On or about October 20, 2017, a woman named Andreana Diaz was injured aboard a vessel owned in whole or part by Jet Boat Miami LLC, an entity which Mr. Fernandez owned. Ex. 7, at 30:16-31:17.

42. Ms. Diaz made a claim against Jet Boat Miami LLC for her injuries as a result of the October 20, 2017 incident. *Id.*, at 31:3-9. *See also* email from Mr. Fernandez, dated October 27, 2017, a true and correct copy of which is attached hereto as Exhibit 10 (in which Mr. Fernandez states: "I just sent you a new claim for the client Andreana Diaz in another email with all the information on the case.")

43. None of the aforementioned four additional prior losses involved vessels insured with GREAT LAKES at the time of the loss itself. Ex. 1, at ¶23.

44. Mr. Fernandez admits that Jet Boat Miami LLC lost its "claims free discount" with its previous insurer, Lloyd's of London, due to the incidents involving Ms. Lanier and Ms. Diaz. Ex. 7, at 32:10-34:3.

45. Mr. Usher, Concept's Senior Underwriter, has had over 35 years of experience in the marine insurance industry. Ex. 1, at ¶¶'a 3-5.

46. As a prudent and intelligent marine insurance underwriter, Mr. Usher considers the facts of an insured's loss history among the most germane to deciding whether to issue a policy, what premium to charge, and what terms and conditions to require. Ex. 1, at ¶¶'s 43-45.

47. Mr. Usher considers loss history to be material because these facts could and likely would influence the mind of a prudent and intelligent marine insurance underwriter in determining whether to accept the risk because these past events are the best (and only) indicators of future risk. Therefore, truthful answers to questions regarding loss history are material to his decisions as a prudent and intelligent underwriter because false answers would only result in a faulty evaluation of the risk. *Id.*, ¶44.

48. The matter of an insured's loss history, whether he or she was at the helm when such a loss occurred or not, is always of concern to Mr. Usher, and to any reasonable underwriter, as it is an indicator of the insured's care and skill in managing and maintaining the vessel, and it is the best indicator of the likelihood of future losses. *Id.*, at ¶45.

49. As stated in the Concept Underwriting Manual regarding "Owner/Operator Acceptability," (a true and correct copy of which is attached hereto as Exhibit 11, at 3-4):

> Assuming that the owner and operators (they may not be the same person) meet all of the standards referred to above we must consider their past loss records on boats as well as on the land. Again, we are seeking patterns and we specifically ask about marine losses – insured or not – to establish if any pattern of incidents exist that may not have been the subject of an insurance claim but that would suggest if we were to issue a policy could well become one against our underwriters. For example, an owner could have had a number of small grounding incidents that caused damage to his vessel but not enough to impact a policy. This would suggest that sooner or later if the pattern continues, he will commit a major navigational error that will result in an expensive insurance claim.
>
> If an owner has had previous losses, these must be taken into consideration when deciding whether or not to offer terms and these will impact the price charged. [….]
>
> As far as other past losses are concerned, as a rule, one is unfortunate; two begins to look like carelessness. More than that and the owner is probably not insurable. There may be extenuating circumstances but if you have doubts either refer to a Director or do not quote.

50. As stated in the Concept Special Risks Rating Guide V5 (a true and correct copy of which is attached hereto as Exhibit 12, at 5-6): "Experience Credit: This is a standard credit and does not vary. It is only offered where an operator has sufficient (two years or more) relevant experience with type of vessel and clean loss record."

51. Had SEA 21-21 truthfully disclosed just the July 2016 loss on either the Original Application or Renewal Questionnaire, Concept would have charged a higher premium for both the 2018 and 2019 Policies by approximately 30%. Ex. 1, at ¶¶'s 48,51.

52. Had SEA 21-21 truthfully disclosed just the August 6, 2016, the May 26, 2017, and the October 20, 2017 losses on the Original Application, Concept would have charged a higher premium for the 2018 Policy by approximately 30%. *Id.*, at ¶49.

53. Had SEA 21-21 truthfully disclosed just the August 6, 2016, the May 26, 2017, the October 20, 2017, and the May 9, 2018 losses on the Renewal Questionnaire, Concept would have charged a higher premium or declined to issue the 2019 Policy due to the number of losses. *Id.*, at ¶52.

54. SEA 21-21 admitted that it received a $50,000 reduction in the $400,000 purchase price of the Vessel for money that would be used to make repairs to the Vessel's center engine. ECF No. 60-

2, at 44:13-46:7. *See also* Marine Note, Security Agreement & Power of Attorney, signed by Mr. Fernandez on a true and correct copy of which is attached hereto as Exhibit 13, at 9 (where it is handwritten: "$50,000 deferred due to oil analysis of center engine. Any monies not applied to center engine are due to lender 120 days from signing….")

55. As part of its Fed.R.Civ.P 26 Initial Disclosures, Defendant produced the document entitled "Engine Repair Costs." A true and correct copy of the aforementioned document is attached hereto as Exhibit 14.

56. SEA 21-21 claims to have spent approximately $43,881.42 to repair the center engine of the Vessel. ECF No. 60-2, at 62:15-25 (referring to "Engine Repair Costs.")

57. In the course of discovery, Plaintiff served on Defendant a Request for Production per Fed.R.Civ.P 34 seeking, among other things, "[a]ny and all receipts, logs, records and similar documents which in any way demonstrate that Defendants caused any work, upgrading and/or maintenance to be conducted or performed with respect to the vessel insured under Plaintiff's Policy No. CSRYP/174282 at any time after that vessel's purchase," in response to which the Defendant produced 1) a 25-page document entitled "Transaction Detail" showing SEA 21-21's expenses between March 2016 and January 2020, and 2) a 197-page collection of various receipts and invoices entitled "La Bestia Repair and Maint-Invoices." *See* Defendant's Responses To Plaintiff's Request for Production, dated Jan 6, 2021, a true and correct copy of which is attached hereto as Exhibit 15, at 3.

58. On or about March 30, 2021, Plaintiff retained Revel Boulon, CMS accredited marine surveyor and adjuster with Sedgwick with more than 14 years of experience as a USCG Licensed Chief Engineer, and provided him with copies of the documents produced by the Defendant, including, but not limited to, the aforementioned "Transaction Detail," the 197 pages of receipts and invoices entitled "La Bestia Repair and Maint-Invoices," and the document entitled "Engine Repair Costs," as well as the list of various upgrades/improvements SEA 21-21 claims to have performed on the Vessel with associated costs as stated in Ms. Watson's email of March 21, 2019 (ECF No. 62-3, Bates-stamped Sea 21-21_UF000061 to Sea 21-21_UF000063), for his review and analysis. Declaration of Revel Boulon, dated August 19, 2021, a true and correct copy of which is attached hereto as Exhibit 16, at ¶6.

59. In general, Mr. Boulon has opined that much of the work which SEA 21-21 claims to have

performed lacks supporting documentation, and where supporting documentation could be found, "the represented costs were significantly higher for most line items where there was documented receipts or invoices." *Id.*, at ¶8.

60. Mr. Boulon has opined that, of the $43,881.42 which SEA 21-21 claims to have spent on repairs to the Vessel's center engine, the documents produced by SEA 21-21 support a showing of no more than $20,758.58 being spent on such repairs. Ex. 16, at ¶10, pp.'s 6-7 (Table 2).

61. As stated by Mr. Usher in his Declaration, the Original Application specifically inquired into the Vessel's purchase price because, as a prudent and intelligent marine insurance underwriter, he considers purchase price to be among the most germane facts when deciding whether to issue a policy, what premium to charge, and what terms and conditions to require. Concept would never agree to issue a policy insuring a vessel for more than its purchase price plus the cost of investment, as doing so would create a moral hazard whereby the vessel was insured for more than had been invested in it. Ex. 1, at ¶46.

62. Had SEA 21-21 truthfully disclosed in the Original Application that it had received a $50,000 reduction in the $400,000 purchase price of the Vessel for repairs to the center engine and that SEA 21-21 had spent no more than approximately $20,758.58 for such repairs, Concept would not have agreed to insure the Vessel for the stated purchase price of $400,000 or any amount in excess of the amount invested in it by the insured. Ex. 1, at ¶50.

63. Mr. Boulon has opined that, of the $176,510 which SEA 21-21 claims to have spent on various upgrades/improvements to "LA BESTIA" and which Concept deemed to be non-maintenance related, the documents produced by SEA 21-21 support a showing of no more than $37,754.49 having been spent on such work. Ex. 16, at ¶9, pp.'s 3-6 (Table 1).

64. When Mr. Fernandez was questioned regarding the list of upgrades/improvements allegedly made to the Vessel and costs for the same as stated Ms. Watson's email of March 21, 2019 (ECF No. 62-3), he sought to distance himself from the information contained within it, stating "I didn't create it. I don't know what is on that list," and later "maybe they added things, I don't know," and "[a]sk Beatriz Watson, the person that created this." ECF No. 60-2, at 75:7-76:3.

65. Had SEA 21-21 truthfully disclosed in the communications regarding its request to increase the insured value of "LA BESTIA" based on various upgrades/improvements that it had spent no more than $37,754.49 on such work, Concept would not have agreed to issue the endorsement

increasing the insured value by $160,000, nor would Concept have agreed to insure the Vessel at any amount in excess of the amount invested in it by the Insured because to do so would create a "moral hazard." Ex. 1, at ¶¶'s 47, 46, 53.

66. As stated in the Concept Underwriting Manual (Ex. 11, at 3) regarding vessel purchase price,

> the purpose of insurance is to enable someone to be put back into the condition they enjoyed prior to a loss, therefore, we do not insure vessels for more than their purchase price to the current owner without evidence in the form of receipts of genuine investment to increase the vessel's value (as opposed to the cost of routine maintenance such as bottom painting etc.)

67. The 2019 Policy (ECF No. 62-5, at 16) contains a choice of law clause which states:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

Dated: August 20, 2021
Fort Lauderdale, Florida

GOLDMAN & HELLMAN
*Attorneys for Plaintiff*
8751 W. Broward Boulevard
Suite 404
Fort Lauderdale, Florida 33324
Tel (954) 356-0460 Fax (954) 832-0878

By: /s/ Steven E. Goldman
    STEVEN E. GOLDMAN, ESQ.
    FLA. BAR NO. 345210

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on August 20, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record:

| | |
|---|---|
| Christopher J. Lynch, Esq.<br>Hunter Lynch Law<br>*Attorneys for Defendant*<br>6915 Red Road, Suite 208<br>Coral Gables, FL 33143<br>Tel: 305-443-6200<br>Clynch@hunterlynchlaw.com<br>Lmartinez@hunterlynchlaw.com | Henry Marinello, Esq.<br>LAW OFFICE OF HENRY MARINELLO, P.A.<br>*Co-Counsel for Sea 21-21 LLC*<br>P.O. Box 562516<br>Miami, Florida 33256<br>Telephone 305-670-5688<br>Fax 305-238-5553<br>Email hmarinello@hemlegal.com |

      Respectfully submitted,
      GOLDMAN & HELLMAN
      *Attorneys for Plaintiff*
      8751 W. Broward Boulevard
      Suite 404
      Fort Lauderdale, FL 33324
      Tel (954) 356-0460
      Fax (954) 832-0878

      By: /s/ Steven E. Goldman
      STEVEN E. GOLDMAN
      FLA. BAR. NO. 345210